**Certiorari Denied, December 11, 2018, No. S-1-SC-37328**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2019-NMCA-006**

**Filing Date: October 4, 2018**

**Docket No. A-1-CA-35904**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**JUAN TRINIDAD SANCHEZ,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VARGAS, Judge.**

**{1}** The opinion filed October 3, 2018, is hereby withdrawn, and this opinion is filed in its stead. Defendant Juan Trinidad Sanchez appeals the district court's enhancement of his sentence for felony escape from a community custody release program (CCP) under NMSA 1978, Section 30-22-8.1 (1999). We conclude that Defendant's sentence was not improper because: (1) the felony escape from CCP statute allows for an elevated degree of offense based on a prior felony charge irrespective of whether the defendant is ultimately convicted of the felony; (2) the Legislature did not contemplate a prior felony

1

conviction in assigning the punishment for felony escape from CCP, and (3) the escape from CCP statute and the habitual offender enhancement statute serve different purposes. We affirm Defendant's sentence as consistent with the plain language of the statutes as well as case law recognizing the difference between enhancements based on prior convictions and elevated degrees of offense based on prior charges.

## BACKGROUND

**{2}** Defendant was convicted of felony possession of a controlled substance and was subsequently committed to CCP. Two weeks after being committed to CCP Defendant cut off his ankle monitor, failed to respond to messages from monitoring officers, and was subsequently taken into custody. A grand jury indicted Defendant for escape from CCP. The State charged Defendant with felony escape from CCP because the possession charge, for which Defendant was committed to CCP, was also a felony, and a jury found him guilty. The State then sought to enhance Defendant's felony escape conviction by eight years pursuant to the habitual offender statute, asserting that Defendant had three or more prior felony convictions, one of which was his conviction for possession of a controlled substance (felony possession).[1] The district court found Defendant was a habitual offender, and enhanced his sentence for felony escape by eight years. This appeal followed.

## DISCUSSION

**{3}** Defendant argues that his conviction for felony possession was impermissibly used twice during sentencing: first to elevate the degree of the escape charge to a felony, and then again as a prior felony conviction for purposes of the habitual offender enhancement. We must therefore decide whether a felony charge that ultimately results in a conviction and gives rise to a felony escape conviction under Section 30-22-8.1 can then be used as a prior felony conviction for a habitual offender enhancement of the felony escape sentence. Much of the case law on this issue contains ambiguous or vague language, including references to felonies, rather than convictions, and punishments, as opposed to sentences or increased degrees of an offense. We are nonetheless able to discern two distinct lines of case law: those analyzing statutes, which require proof of a prior felony conviction or proof of a defendant's status as a felon, and those analyzing statutes that do not. For the reasons that follow, we believe this case belongs in the latter category.

### A.    Sentencing Framework

**{4}** "In New Mexico, the court's sentencing authority is limited by statute[, and t]he [L]egislature must give express authorization for a sentence to be imposed." *State v. Lacey*, 2002-NMCA-032, ¶ 5, 131 N.M. 684, 41 P.3d 952 (citation omitted). "We review issues of statutory interpretation de novo." *State v. Strauch*, 2015-NMSC-009, ¶ 13, 345

---

[1] Defendant does not contest the existence or use of the other prior felony convictions, and they are not relevant to the issue on appeal.

P.3d 317. When interpreting a statute, we seek to give effect to the Legislature's intent, and do so by looking first to the plain meaning of the statute's language. *State v. Nieto*, 2013-NMCA-065, ¶ 4, 303 P.3d 855. If the language of the statute "is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Johnson*, 2001-NMSC-001, ¶ 6, 130 N.M. 6, 15 P.3d 1233.

**{5}** The Criminal Sentencing Act, NMSA 1978 Section 31-18-12 to -26 (1977, as amended through 2016), grants courts the authority to sentence "all persons convicted of a crime under the laws of New Mexico." Section 31-18-13(A). Pursuant to the habitual offender statute contained within the Criminal Sentencing Act, the extent to which a defendant's sentence can be enhanced depends on the number of the defendant's prior felony convictions. *See* § 31-18-17(C) (providing that a person convicted of a felony within the Criminal Code who has incurred three or more qualifying prior felony convictions may be characterized as a habitual offender "and his basic sentence shall be increased by eight years"). Despite the habitual offender statute's statement of broad applicability to "all persons convicted of a crime," our courts have recognized certain exceptions to its broad application. *State v. Peppers*, 1990-NMCA-057, ¶ 28, 110 N.M. 393, 796 P.2d 614.

**{6}** The case law recognizing these exceptions all involve the improper use of a prior conviction, either to support an element of a subsequent conviction and an enhancement under the habitual offender statute or to stand as the basis for two separate enhancements. For example, in *State v. Keith*, 1985-NMCA-012, ¶¶ 3, 11, 102 N.M. 462, 697 P.2d 145, we held that a prior armed robbery conviction could not be used to elevate a defendant's subsequent armed robbery conviction from a second degree to a first degree felony and then further enhance the defendant's sentence under the habitual offender statute. Then, in *State v. Haddenham*, 1990-NMCA-048, ¶ 21, 110 N.M. 149, 793 P.2d 279, we held that a prior felony conviction could not be used to satisfy an element of a felon in possession of a firearm conviction, and also be used to enhance the defendant's sentence under the habitual offender statute. Finally, in *Lacey*, 2002-NMCA-032, ¶¶ 15-16, this Court held that a prior felony trafficking conviction could not be used to elevate a subsequent trafficking conviction from a second to first degree felony, and then be used to enhance the defendant's sentence for conspiracy to commit a first degree felony.

**{7}** Each of these cases follow the analytical framework set out in *Keith*, where this Court began with the language of the statutes and, perceiving a general "reluctance to allow stacking of enhancements directed at similar purposes[,]" concluded that where a general statute—in these cases, the habitual offender enhancement statute—is in conflict with a more specific one, "the specific [statute] is construed as an exception to the general statute." 1985-NMCA-012, ¶¶ 6, 9. *Keith* referred to our policy of strictly construing highly penal statutes and the rule of lenity in reaching its holding. *Id.* ¶¶ 10-11. *Haddenham* largely followed the same approach, again finding a common purpose between the statutes at issue and referencing the rule of lenity. 1990-NMCA-048, ¶¶ 14, 20. *Haddenham* also refined the analysis by emphasizing the importance of legislative intent in considering prior convictions as part of a subsequent conviction: "Where the legislative intent is to permit the use of the same facts to impose an enhanced sentence,

the legislation must clearly so indicate." *Id.* ¶ 20. It is *Lacey*, however, that truly solidified the importance of gleaning legislative intent from the language of the statute by drawing a clear distinction between crimes that require a prior felony conviction, either as a basis for enhancement or factual element, and those that do not. 2002-NMCA-032, ¶ 14. In addition to considering the common purpose of the statutes at issue and acknowledging the rule of lenity, the *Lacey* court analyzed the issue that is the crux of an analysis under *Keith* and its progeny: "if a prior felony conviction is already taken into account in determining the punishment for a specific crime, the [L]egislature, unless it clearly expresses otherwise, does not intend that [the prior felony conviction] also be used to enhance the conviction under the habitual offender statute." *Lacey*, 2002-NMCA-032, ¶¶ 6, 7, 9 (citing *Peppers*, 1990-NMCA-057, ¶ 30, for the proposition that *Keith* and *Haddenham* "both derive from a reasonable assumption about legislative intent").

{8}     While *Keith*, *Haddenham*, and *Lacey*, analyze statutes where the Legislature specifically contemplated the existence of a prior felony conviction in setting the punishment for the offense, *Peppers* involved a statute that based the punishment for the offense on a prior felony *charge*. 1990-NMCA-057, ¶ 25 (citing NMSA 1978, Section 31-3-9 (1999)). *Peppers* used the Legislature's language requiring a charge, rather than conviction, to distinguish the case from *Keith* and its progeny in two ways. First, this Court noted that the failure to appear statute applies not only to persons who had been convicted, but also those whose trial is still pending. *Peppers*, 1990-NMCA-057, ¶ 32 ("To prove the offense of failure to appear, the state need not establish that the defendant was convicted of or committed the offense for which the defendant was on trial."). As such, the *Peppers* court reasoned that, unlike in *Keith* and *Haddenham*, the Legislature could not have considered a prior felony conviction in determining the punishment for failure to appear, because a prior felony conviction was not required under the failure to appear statute:

> When the [L]egislature set the penalty for failure to appear at trial, it could not have assumed that the person who had failed to appear would be convicted at the trial. On the contrary, the [L]egislature should have presumed the innocence of an individual facing trial. . . . In trying to discern legislative intent, we should not presume that the [L]egislature set the penalty for failure to appear on the assumption that a person accused of a crime has actually committed the crime.

*Peppers*, 1990-NMCA-057, ¶¶ 31-33. Second, the *Peppers* court pointed out that because the statute required proof of a charge and not a conviction, the defendant's prior felony conviction was not used to prove the offense of failure to appear. *Id.* ¶ 32. Based on the language of the statute requiring a charge, and not a conviction, in determining the degree of offense, *Peppers* allowed the defendant's failure to appear sentence to be enhanced under the habitual offender statute.

**B.     Escape From CCP Under Section 30-22-8.1**

{9}     Keeping in mind the distinction between prior felony charge and prior felony conviction set forth in *Peppers* and *Lacey*, we look to the language of the statute at issue here. Section 30-22-8.1(A) defines escape from CCP as "a person, excluding a person on probation or parole, who has been lawfully committed to a judicially approved [CCP], including a day reporting program, an electronic monitoring program, a day detention program or a community tracking program, escaping or attempting to escape from the [CCP]." Escape from CCP can either be a misdemeanor or felony, depending on whether the person was committed to the program pursuant to a misdemeanor charge or a felony charge. Section 30-22-8.1(C) ("Whoever commits escape from [CCP], when the person was committed to the program for a felony charge, is guilty of a felony."). Commitment to CCP is not reserved for defendants who have already been convicted; an individual can be placed in CCP prior to having been convicted of the crime for which he or she is charged. *Cf. State v. Duhon*, 2005-NMCA-120, ¶ 11, 138 N.M. 466, 122 P.3d 50 (concluding that the defendant, placed on house arrest pending trial, was subject to prosecution for escape from CCP under Section 30-22-8.1); *State v. Guillen*, 2001-NMCA-079, ¶ 11, 130 N.M. 803, 32 P.3d 812 (same).

{10}     The exceptions to application of the habitual offender statute set forth in *Keith*, *Haddenham*, and *Lacey*, do not apply here, as there is no dual use of a prior conviction or factual predicate. Much like the failure to appear statute in *Peppers*, the plain language of the escape statute makes it clear that the Legislature requires proof of different facts for an escape from CCP conviction than it does for a habitual offender enhancement. *See* 1990-NMCA-057, ¶ 32. For a defendant to be found guilty of felony escape from CCP the state must show that a felony charge led to the defendant's commitment to the program, Section 30-22-8.1(C), while a habitual offender enhancement requires that the state show that the defendant had three or more prior felony convictions. Section 31-18-17(C). Defendant's status as a felon, particularly his conviction for felony possession, is not an element of his conviction for escape from CCP, *see* § 30-22-8.1 (requiring felony charge), and merely served to place him in the CCP from which he subsequently escaped. As such, his prior felony possession conviction is sufficiently removed from his felony escape sentence as to allow for a habitual enhancement under our double-enhancement analysis. *See State v. Najar*, 1994-NMCA-098, ¶ 4, 118 N.M. 230, 880 P.2d 327 (affirming the habitual offender enhancement of escape from an inmate-release program as based on separate facts from the conviction itself).

{11}     By basing the degree of the escape on the degree of the prior *charge*, the plain language of Section 30-22-8.1 is clear that whether the accused is convicted of the prior felony is immaterial. *See Peppers*, 1990-NMCA-057, ¶ 33. Although Defendant here was convicted of the felony possession charge that gave rise to his commitment to the CCP, that fact does not alter our analysis under the plain language of Section 30-22-8.1. Whether a defendant is convicted of a charge or not, does not alter the statutory language establishing the degree of the charge, regardless of the conviction. *See State v. Almanzar*, 2014-NMSC-001, ¶ 14, 316 P.3d 183 ("Where the language of a statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)); *State v. Young*, 2004-NMSC-015, ¶ 27, 135 N.M. 458, 90 P.3d 477 (declining "to hobble statutory

interpretation with an artificial and unduly narrow construction of the statute" (internal quotation marks and citation omitted)). It would be improper for us to read the Legislature's use of the term "charge" as "conviction" in the absence of ambiguity. *See Peppers*, 1990-NMCA-057, ¶¶ 31-33 (discussing the impact that presumption of innocence has on interpretation of legislative intent: "In trying to discern legislative intent, we should not presume that the [L]egislature set the penalty for failure to appear on the assumption that a person accused of a crime has actually committed the crime."); *see also State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 ("[W]hen a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation. We will not read into a statute language which is not there, especially when it makes sense as it is written." (internal quotation marks and citation omitted)).

**{12}**     We also note that the escape from CCP statute serves a different purpose than the habitual offender statute. While the habitual offender statute serves the purpose of deterring criminal conduct "by placing convicted felons on notice that they will be subjected to enhanced sentences for the commission of subsequent offenses[,]" *Haddenham*, 1990-NMCA-048, ¶ 14, the escape from CCP statute "was designed to create incentives for complying with the conditions of restrictive [CCP.]" *Duhon*, 2005-NMCA-120, ¶ 12. In addition, Section 30-22-8.1 can hardly serve the same purpose as the habitual offender statute by giving notice of harsher penalties to convicted felons when it applies to those who may not yet be convicted of a felony. The analysis used in *Keith* and its progeny, in which conflicting statutes with the same purpose are applied with deference to more specific statutes, therefore does not apply here. *See Lacey*, 2002-NMCA-032, ¶ 9.

**{13}**     *Peppers*, in dicta, acknowledged that "if the sentence being enhanced had been imposed for the offense of escape by a convicted felon[,]" the analysis would likely be different. 1990-NMCA-057, ¶ 32 (citing *State v. Cox*, 344 So. 2d 1024 (La. 1977). Because this remark has no bearing on the holding in *Peppers*, it is dicta and is therefore not binding on the application of *Peppers* in this case. *See Ruggles v. Ruggles*, 1993-NMSC-043, ¶ 22 n.8, 116 N.M. 52, 860 P.2d 182 (defining "dictum" as unnecessary to the decision of issues, or a comment concerning a rule of law not necessary to the determination of the case at hand, which therefore lacks the force of an adjudication). Nonetheless, because Defendant cites to *Cox* as support for his position on appeal, we address it briefly.

**{14}**     *Cox* falls somewhere between our reasoning in *Peppers* and the reasoning set forth in *Keith* and its progeny. While the escape statute at issue in *Cox* elevates the degree of offense much like Section 30-22-8.1, it differs from our statute in that it bases the elevated degree of offense not on a prior charge, but on a prior conviction: "The escape statute itself causes an enhancement of penalty by requiring consecutive sentences because of a defendant's previous felony conviction." *Cox*, 344 So. 2d at 1026. By referencing *Cox* in conjunction with the offense of escape by a convicted felon, the *Peppers* court appears to have been alluding to the impact that a prior felony conviction would have on a subsequent escape conviction if a prior *conviction* were an element of

6

the offense. Such a case would be similar to *Haddenham*, where the defendant's status as a felon was impermissibly used both to prove an element of the crime of felon in possession of a firearm and to enhance his sentence under the habitual offender statute. 1990-NMCA-048, ¶ 3. We also note that Section 30-22-8.1 had not been promulgated when *Peppers* was issued, and as such could not have been contemplated by the *Peppers* court's remarks on the legality of a sentence for escape. *See* § 30-22-8.1.

**{15}** Defendant also urges this Court to apply the rule of lenity, but "lenity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *State v. Johnson*, 2009-NMSC-049, ¶ 18, 147 N.M. 177, 218 P.3d 863 (emphasis, internal quotation marks, and citation omitted). Because we do not find an insurmountable ambiguity regarding the scope of the statutes in this case, the rule of lenity is inapplicable. *See id.* ("The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." (internal quotation marks and citation omitted)).

**{16}** Defendant's degree of escape from CCP was based upon the felony possession *charge*, while the enhancement of his felony escape sentence was based upon his three prior felony *convictions*. We conclude that it was permissible for the State to use Defendant's felony possession charge to determine whether to charge Defendant for misdemeanor or felony escape from CCP and to subsequently use Defendant's felony possession conviction to enhance his sentence for escape from CCP.

**CONCLUSION**

**{17}** For the foregoing reasons, we affirm the district court's finding that Defendant was a habitual offender and its enhancement of his sentence for felony escape.

**{18}     IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**STEPHEN G. FRENCH, Judge**