23 P.3d 103

SALT RIVER PIMA–MARICOPA INDIAN COMMUNITY SCHOOL, a division of the Salt River Pima–Maricopa Indian Community; Akimel O'Otham Pee Posh Charter School; Hotevilla Bacavi Community School; Greyhills Academy High School; Shonto Preparatory School; Tolchii Kooh Charter School, Inc., Plaintiffs–Appellants,

v.

STATE of Arizona; Jane Dee Hull, Governor of the State of Arizona; Lisa Graham Keegan, Superintendent of Public Instruction of the State of Arizona; Arizona Department of Education, Defendants–Appellees.

Thomas Walker, Jr.; Genevieve Walker; Teneil Walker, by and through her next friends Thomas and Genevieve Walker; Justin Walker, by and through his next friends Thomas and Genevieve Walker; Afton Walker, by and through his next friends Thomas and Genevieve Walker; Marlene Sekaquaptewa; Hared Jason Honanwaima, by and through his next friend Marlene Sekaquaptewa; Robert Marlon Kewanimptewa, by and through his next friend Marlene Sekaquaptewa; on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

State of Arizona; Jane Dee Hull, in her official capacity as Governor of the State of Arizona; Lisa Graham Keegan, Superintendent of Public Instruction of the State of Arizona; Arizona Department of Education, Defendants–Appellees.

Nos. 1 CA–CV 99–0549, 1 CA–CV 00–0225.

Court of Appeals of Arizona, Division 1, Department E.

May 8, 2001.

Osborn Maledon, P.A. by Andrew D. Hurwitz, Helen Perry Grimwood, Phoenix and DNA People's Legal Services, Inc. by Bethany R. Berger, New York and William E. Morris Institute For Justice by Thomas J. Berning, Tucson, Attorneys for Plaintiffs–Appellants.

Janet Napolitano, Attorney General by Lynne C. Adams, Assistant Attorney General, Elliot Talenfeld, Assistant Attorney General, Gretchen O. Schneidau, Assistant Attorney General, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

VOSS, Judge

¶ 1 This action challenges the validity of Arizona Revised Statutes ("A.R.S.") section 15–185(D) (Supp.2000), commonly known as the "Deduct Statute." In granting summary judgment to the State of Arizona and the individual defendants (the "state"), the trial

court upheld the statute and rejected arguments that it violated the Equal Protection Clauses of the Arizona and United States Constitutions, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (1994) as implemented by 34 C.F.R. § 100.3(b)(2) (2000), and the Pastor Amendment, 20 U.S.C. § 8064(g)(2000). We affirm.

## I. BACKGROUND

¶ 2 The pertinent facts are not in dispute. In 1994, the Arizona legislature authorized the creation of charter schools to serve as alternatives to traditional public schools. 1994 Ariz. Sess. Laws 2517–2523. Private entities establish charter schools through a contract with a school district governing board, the state board of education, or the state board for charter schools. A.R.S. § 15–101(3) (Supp.2000); see also A.R.S. § 15–183 (Supp.2000). Arizona law forbids charter schools from charging tuition, levying taxes, or issuing bonds, A.R.S. section 15–185(B)(7), but does provide for financial support from the state. A.R.S. § 15–185.

¶ 3 In establishing an equalization formula for funding maintenance and operations ("M & O") at charter schools, the Legislature enacted the Deduct Statute, which provides in relevant part as follows:

> Charter schools are allowed to accept grants and gifts to supplement their state funding, but it is not the intent of the charter school law to require taxpayers to pay twice to educate the same pupils. The base support level for a charter school or for a school district sponsoring a charter school shall be reduced by an amount equal to the total amount of monies received by a charter school from a federal or state agency if the federal or state monies are intended for the basic maintenance and operations of the school. The superintendent of public instruction shall estimate the amount of the reduction for the budget year and shall revise the reduction to reflect the actual amount before May 15 of the current year. If the reduction results in a negative amount, the negative amount shall be used in computing all budget limits and equalization assistance,

except that: ... [e]qualization assistance shall not be less than zero.

A.R.S. § 15–185(D). The statute defines "[m]onies intended for the basic maintenance and operations of the school" as "monies intended to provide support for the educational program of the school, except that it does not include supplemental assistance for a specific purpose or P.L. 81–874 monies [federal aid to school districts that are financially impacted by federal activities]." A.R.S. § 15–185(I).

¶ 4 Arizona implemented the Deduct Statute for the fiscal year ending June 30, 1998. Since that time, the Bureau of Indian Affairs ("BIA") has provided ten charter schools with Indian School Equalization Program (ISEP) Funds for M & O in accordance with the Tribally Controlled Schools Act of 1988 ("TCSA"), 25 U.S.C. §§ 2501–2511 (Supp. 2000). The M & O funding from the BIA to each BIA-funded charter school has exceeded the amount that would have been provided by the state as basic state aid (equalization assistance). Consequently, the state has provided no equalization assistance funds to these schools.

¶ 5 In 1998, two sets of plaintiffs challenged the Deduct Statute: schools funded by the BIA that had converted to charter schools, and students attending those schools. The trial court considered the cases together without formally consolidating them and both sides moved for summary judgment. The trial court ruled for the state on all issues, finding that the Deduct Statute was not pre-empted by federal law; that the statute did not, either on its face or as applied, violate federal or state equal protection provisions or Title VI; and that the state did not violate the Pastor Amendment, which was passed by Congress following the Deduct Statute's enactment.

¶ 6 The trial court subsequently granted plaintiffs' motion for new trial but vacated its order following supplemental briefing, reconfirming its earlier grant of summary judgment. This appeal followed.

## II. DISCUSSION

### A. Standard Of Review.

¶ 7 On appeal from a summary judgment, we determine de novo whether

there is a genuine dispute of material fact and, if not, whether the superior court correctly applied the substantive law. *In re Estate of Johnson,* 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991). We view the facts in the light most favorable to the party against whom summary judgment was granted. *Estate of Hernandez v. Flavio,* 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997).

### B. The Deduct Statute Is A Reasonable Classification That Does Not Violate Federal Or State Equal Protection Clauses.

¶ 8 The Equal Protection Clause of the Fourteenth Amendment guarantees all persons equal protection of the laws. Our state counterpart is Article 2, section 13 of the Arizona Constitution, which provides that "[n]o law shall be enacted granting to any citizen ... privileges or immunities which, upon the same terms, shall not equally belong to all citizens...."

■ ¶ 9 As a matter of law, the Deduct Statute does not violate either clause. These constitutions require only that the state classify reasonably and afford equal treatment to persons similarly situated. *Shelby Sch. v. Ariz. State Bd. of Educ.,* 192 Ariz. 156, 169, ¶ 65, 962 P.2d 230, 243 (App.1998) (applying state and federal clauses and holding that the state did not violate equal protection by requiring a credit check of charter school applicants but not of employees of non-charter public schools). The constitutions "do[ ] not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (quoting *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940)). BIA-funded charter schools and non-BIA funded charter schools are not similarly situated. Whereas the former charter schools receive M & O funds from government sources in excess of the state's equalization assistance, the latter charter schools do not. That is a

difference that does not implicate equal protection. *See Tigner,* 310 U.S. at 146–47, 60 S.Ct. 879 (Texas law applying criminal antitrust penalties to industry and not to agriculture did not violate equal protection because of the differences in the two areas).

¶ 10 A district court reached a similar conclusion in *Meyers v. Board of Education of San Juan School District,* 905 F.Supp. 1544 (D.Utah 1995). The *Meyers* plaintiffs were Navajos who lived in a remote and inaccessible area of the Navajo Nation known as Navajo Mountain. *Id.* at 1551. There was no district public school at Navajo Mountain, but there was a BIA-operated elementary school, that was free only for Native Americans. *Id.* at 1571. Accordingly, the San Juan School District funded costs associated with non-Native American students. *Id.*

¶ 11 In rejecting plaintiffs' equal protection challenge to this practice, the district court explained that the Native American and non-Native American children were not similarly situated because the BIA provided a free education to the former group but not to the latter. *Id.* The district merely made up for this disparity by enabling non-Native Americans to receive the same education. *Id.* To do otherwise might have actually violated the Equal Protection Clause. *Id.* at 1572. Applying the same reasoning, we hold that no equal protection violation occurred here.[1]

■ ¶ 12 Nevertheless, plaintiffs contend that the two groups of schools are similarly situated, that the Deduct Statute requires strict scrutiny, and that its disparate impact on BIA-funded charter schools violates equal protection. This argument is flawed. The statute must "bear[ ] more heavily on one race than another." *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). In this case, the state's evidence establishes that the BIA-funded charter schools receive the same, if not more, government M & O funding than other charter schools. In light of this record, the BIA-

---

1. The court in *Meyers* opined that because the BIA already provided a free education, "the Equal Protection Clause does not require the

District to offer elementary school services that simply duplicate or compete with the services the BIA already provides." *Id.* at 1579 n. 42.

**112**

funded charter schools have not established that the Deduct Statute bears more heavily upon them.

### C. The Deduct Statute Does Not Infringe The Rights of Students At BIA–Funded Charter Schools Or Impair The Students' Access To Education.

█ ¶ 13 Plaintiffs alternatively argue that a strict scrutiny analysis must apply because education is a fundamental right under the Arizona Constitution. The state, however, contends that the Arizona Supreme Court left this question open in *Roosevelt Elementary School District No. 66 v. Bishop,* 179 Ariz. 233, 877 P.2d 806 (1994). We find it unnecessary to resolve this issue because we conclude that, as a matter of law, the Deduct Statute does not infringe upon the access to education or rights of students at BIA-funded charter schools.

¶ 14 Even if we assume that access to education is a fundamental right, the strict scrutiny analysis does not apply unless plaintiffs' access to education has been denied or substantially infringed. Thus, plaintiffs must show either that the Deduct Statute treats them differently from other similarly situated groups, or that it denies or substantially impairs their access to education. *See Kenyon v. Hammer,* 142 Ariz. 69, 83, 688 P.2d 961, 975 (1984) (differential treatment); *Mem'l Hosp. v. Maricopa County,* 415 U.S. 250, 256–57, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (discussing the impact required to give rise to the compelling interest test); *Bismarck Pub. Sch. Dist. No. 1. v. State,* 511 N.W.2d 247, 257 (N.D.1994) (in the absence of a substantial deprivation of the fundamental right to education, funding disparities may not violate equal protection). As previously discussed, the BIA-funded charter schools are not similarly situated to other charter schools. And, as the trial court correctly noted, the mere recognition of federal funding sources does not infringe the right to education. If the BIA decreased or eliminated federal funds, the statute would provide supporting state funds.

### D. Because The Record Does Not Establish Any Disproportionate Adverse Effect Upon Native Americans, The Deduct Statute Does Not Violate Title VI Or The Implementing Administrative Regulation.

█ ¶ 15 Plaintiffs also argue that the Deduct Statute violates Title VI and an implementing administrative regulation. Title VI provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

█ ¶ 16 A regulation issued under this statutory mandate forbids fund recipients from employing "criteria or methods of administration which have the effect of subjecting individuals to discrimination." 34 C.F.R. § 100.3(b)(2). To state a claim, plaintiffs must make a prima facie showing that they suffered a disproportionate adverse impact. *See, e.g., Elston v. Talladega County Bd. of Educ.,* 997 F.2d 1394, 1407 (11th Cir. 1993). Unlike a Title VI claim, a claim under the regulation does not require proof of an actual intent to discriminate. *Id.* at 1406.

¶ 17 The summary judgment record does not establish that the BIA-funded charter schools suffered as a result of the Deduct Statute. These schools receive funding from government sources that equals or exceeds that provided to other charter schools. The Deduct Statute guarantees that if BIA funding ever falls below the state M & O requirement, the state will make up the difference. A.R.S. § 15–185(D). Thus, BIA-funded charter schools will always receive M & O funding that at least equals that of other charter schools.

¶ 18 Because plaintiffs have not established that the Deduct Statute adversely and disproportionately affects them, we hold that they have failed to make a prima facie case under Title VI. In light of this holding, we find it unnecessary to address whether a substantial legitimate educational goal supports the statute.

### E. Because Charter Schools Are Not The "State," Their Receipt Of Federal Stimulus Funds Does Not Violate The Pastor Amendment.

¶ 19 The Pastor Amendment provides that a "State" may not receive federal charter school stimulus funds if it considers ISEP funding from the BIA in calculating the amount of state assistance to be paid to a charter school. 20 U.S.C. § 8064(g). Plaintiffs argue that the state has violated this law because twelve Arizona charter schools have applied directly to the federal government for charter school stimulus funds. We disagree.

¶ 20 The entire text of the Pastor Amendment states:

Each State that receives a grant under this part and designates a tribally controlled school as a charter school shall not consider payments to a school under the Tribally Controlled Schools Act of 1988 (25 U.S.C. 2507) in determining—

(1) the eligibility of the school to receive any other Federal, State, or local aid; or

(2) the amount of such aid.

20 U.S.C. § 8064(g).

¶ 21 The amendment describes the "State" as any entity (1) that "receives a grant," and (2) that "designates a tribally controlled school as a charter school." Because charter schools cannot designate a tribally controlled school as a charter school, they are not the "State" for purposes of the amendment. Accordingly, the amendment is not intended to preclude individual charter schools from applying directly to the federal government for stimulus funds.

¶ 22 Moreover, state sponsorship and oversight cannot transform charter schools into the "State" for purposes of the amendment. While Arizona statute defines school districts as political subdivisions of the state, A.R.S. section 15–101(20) (Supp.2000), it contains no such definition for charter schools. Rather, the statute provides that charter schools are public schools established pursuant to a contract with an appropriate sponsor. A.R.S. § 15–101(3); *accord* Ariz. Op. Att'y Gen. I95–10 (1995) at 5 (charter schools "exist solely through their contract with a political subdivision or state sponsor"). Charter schools operate as separate entities from the state, but are subject to the same agency supervision and oversight as any other contracting entity. See A.R.S. §§ 15–181 to –189.03 (Supp.2000).

¶ 23 Plaintiffs rely upon Arizona Attorney General Opinion I95–10 as authority for their argument that charter schools are political subdivisions of the state. That opinion, however, states that this characterization only applies to the Public Records and Open Meeting Laws. "Whether an entity is a 'public body' under other state statutes depends on ... a factual and legal analysis consistent with the particular statute." Ariz. Op. Att'y Gen. I95–10 at 6 n. 4. The Attorney General explicitly adhered to the principle of broadly construing the Open Meeting Law with a view to maximizing public access to the government process. *Id.* at 4. That principle is not implicated here.

## III. CONCLUSION

¶ 24 We affirm the trial court's orders granting the state's motions for summary judgment and denying plaintiffs' motions for summary judgment and new trial.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, JON W. THOMPSON, Judge.