IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

D. JEFFREY and LYNDA CRAVEN; TRACY BRAATZ; STEVEN
GEORGE DANNER; JOANNE HOPMEYER; MARY FOLEY
and CYNTHIA ZAK-SLETTE, *Plaintiffs/Appellants*,

*v.*

JOHN HUPPENTHAL, Superintendent of Public Instruction; STATE OF
ARIZONA and ARIZONA STATE BOARD OF EDUCATION,
*Defendants/Appellees,*

CREIGHTON ELEMENTARY SCHOOL DISTRICT NO. 14; ARIZONA
SCHOOL BOARDS ASSOCIATION, *Intervenors/Appellees.*

No. 1 CA-CV 13-0485
FILED 11-18-14

---

Appeal from the Superior Court in Maricopa County
No. CV2009-029436
The Honorable J. Richard Gama, Judge

**AFFIRMED**

---

COUNSEL

Brownstein, Hyatt, Farber, Schreck, LLP, Phoenix
By Kory A. Langhofer, Chase A. Bales
*Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By Kevin D. Ray, Leslie Kyman Cooper, Jordan T. Ellel
*Counsel for Defendants/Appellees*

Peters, Cannata & Moody, PLC, Phoenix
By Donald M. Peters
*Counsel for Intervenors/Appellees*

---

**OPINION**

Presiding Judge Margaret H. Downie delivered the opinion of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

¶1 Appellants are parents of children who attend charter schools in Arizona. They contend the statutory framework for financing charter schools violates the equal protection and general and uniform clauses of the state constitution. For the following reasons, we affirm the superior court's grant of summary judgment against Appellants.

## FACTS AND PROCEDURAL HISTORY

¶2 Appellants sued the Superintendent of Public Instruction, the State Board of Education, and the State of Arizona, seeking injunctive relief as well as a judicial declaration that Arizona's statutory funding scheme for charter schools is unconstitutional because it results in "gross disparities between public charter schools and other district public schools."[1] The Arizona School Boards Association and Creighton Elementary School District No. 14 intervened as defendants. According to Appellants, the alleged disparities arise because Arizona statutes make funding sources available to district schools that are unavailable to charter schools. Appellants further allege that, were charter schools "to receive funding that is substantially equal to their friends and neighbors who attend district public schools, their public charter schools would be able to provide additional services that would enrich their students' educational experience and enhance their educational opportunities."

¶3 On cross-motions for summary judgment, the superior court ruled that a rational basis exists for funding charter and district schools differently and dismissed Appellants' equal protection challenge. In dismissing claims predicated on the general and uniform clause of the

---

[1] District public schools, or "district schools," are non-charter public schools for a given geographical region.

Arizona Constitution, the superior court concluded no substantial disparity exists because Appellants concede their children's charter school educations are adequate and because "charter and [public] schools are different, [so] the Legislature may fund them differently."

¶4　　　　　Appellants timely appealed.　We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I.　　Standard of Review

¶5　　　　　On appeal from a grant of summary judgment, we review *de novo* the superior court's application of the law.　*Salt River Pima-Maricopa Indian Cmty. Sch. v. State*, 200 Ariz. 108, 110-11, ¶ 7, 23 P.3d 103, 105-06 (App. 2001).　We also review *de novo* matters of constitutional and statutory interpretation.　*Roosevelt Elementary Sch. Dist. No. 66 v. State*, 205 Ariz. 584, 589, ¶ 24, 74 P.3d 258, 263 (App. 2003) ("*Roosevelt II*").　We will affirm a grant of summary judgment if the superior court was correct for any reason.　*City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14, 32 P.3d 31, 36 (App. 2001).

¶6　　　　　The parties argue at length about the proper standard of review, with Appellants contending the statutory financing scheme is subject to strict scrutiny and Appellees arguing the more deferential rational basis standard applies.　As we explain *infra*, it is unnecessary to decide this issue.　Based on Appellants' own allegations and admissions, as a matter of law, they lack an actionable claim under either the general and uniform clause or the equal protection clause.　*See, e.g.*, *Salt River Pima-Maricopa Indian Cmty. Sch.*, 200 Ariz. at 112, ¶ 13, 23 P.3d at 107 (deeming it unnecessary to decide whether strict scrutiny or rational basis standard applied to charter school funding challenge when, as a matter of law, statutes did not infringe on challengers' rights).

### II.　　Background Regarding Charter Schools and District Schools

¶7　　　　　In 1994, the Arizona Legislature enacted laws governing the creation and maintenance of charter schools.　*See* A.R.S. §§ 15-181 to -189; H.B. 2002, 41st Leg., 9th Spec. Sess., §§ 1-2 (Ariz. 1994).　By statutory definition, charter schools are public schools.　A.R.S. § 15-101(4).　Charter schools are intended to offer "additional academic choices for parents and pupils" and to "serve as alternatives to traditional public schools."　A.R.S. § 15-181(A).

¶8　　　District schools and charter schools are regulated differently. As Appellants concede, charter schools "are freed from some of the administrative regulations imposed on district public schools." *See, e.g.,* A.R.S. §§ 15-183(E)(3) (charter school curriculum may emphasize "a specific learning philosophy or style or certain subject areas."), -183(E)(5) (exempting charter schools from statutes and rules governing district schools, including those regarding teacher hiring, management, and firing), -184(B) (charter schools give enrollment preference to siblings of existing students), -184(G) (charter schools may limit admission to students in a given age group or grade level), -184(H) (charter schools may enroll students of a single gender).

¶9　　　In addition to being regulated differently, charter and district schools are funded differently. They receive the same base support level funding. *See* A.R.S. §§ 15-185(B)(4), -901(B)(2), -943. But district schools receive state funding for constructing school facilities, while charter schools do not. A.R.S. § 15-2041. District schools may receive additional funding through budget overrides and bonds, whereas charter schools lack that option. A.R.S. § 15-185(B)(6), -481, -491(A)(3). Charter schools, however, receive additional funding known as "equalization assistance" on a per-student basis. A.R.S. § 15-185(B)(4). Charter schools may also accept grants and gifts to supplement state funding. A.R.S. § 15-185(D). Additionally, charter schools owned by nonprofit organizations may receive funds obtained through issuance of educational facility bonds by Industrial Development Authorities. *See* A.R.S. §§ 35-701(8)(a)(xii), -721. Charter schools are also entitled to proceeds from a stimulus fund for start-up costs and costs associated with renovating or remodeling buildings and structures. A.R.S. § 15-188.

## III.　General and Uniform Clause

¶10　　　The general and uniform clause of the Arizona Constitution states, in relevant part:

> The legislature shall enact such laws as shall provide for the establishment and maintenance of a general and uniform public school system, which system shall include: 1. Kindergarten schools. 2. Common schools. 3. High schools. 4. Normal schools. 5. Industrial schools. 6. Universities . . . .

Ariz. Const. art. XI, § 1.A.

¶11　　　The general and uniform requirement "applies only to the state's constitutional obligation to fund a public school system that is

4

adequate." *Hull v. Albrecht*, 190 Ariz. 520, 524, 950 P.2d 1141, 1145 (1997). Appellants here admit that their children are receiving adequate educations at their respective charter schools. Indeed, various Appellants testified that their children receive "quality academics," "an exceptional education" that "meets or exceeds all state standards," and a "happy, productive learning environment" with no academic concerns.

¶12 Appellants urge us to disregard the statement in *Hull* that the general and uniform clause mandates only that the state "fund a public school system that is adequate," *id.*, and to instead rely on language from a footnote in *Roosevelt Elementary Sch. Dist. No. 66 v. Bishop*, 179 Ariz. 233, 877 P.2d 806 (1994) ("*Roosevelt I*"), with which only two justices agreed.[2] The *Roosevelt I* footnote suggests that adequacy of education does not defeat a claim under the general and uniform clause. *Id.* at 241 n.7, 877 P.2d at 814 n.7.

¶13 We are constrained by decisions of the Arizona Supreme Court and may not overrule, modify, or disregard them. *State v. Sullivan*, 205 Ariz. 285, 288, ¶ 15, 69 P.3d 1006, 1009 (App. 2003). The most recent interpretation of the general and uniform clause in the relevant context is *Hull* – a decision joined in by four of five justices. Moreover, *Hull* is consistent with other appellate pronouncements that the legislature's duty is to fund a public school education that is adequate. *See, e.g.*, *Roosevelt I*, 179 Ariz. at 246, 877 P.2d at 819 ("The [general and uniform] clause was intended to guarantee not the unattainable result – equal education – but an equal *opportunity* for each child to obtain the *basic, minimum education* that the state would prescribe for public school students.") (Feldman, J., concurring) (original emphasis); *Shofstall v. Hollins*, 110 Ariz. 88, 90, 515 P.2d 590, 592 (1973) ("The [Arizona] constitution, by its provisions, assures to every child a basic education."); *Roosevelt II*, 205 Ariz. at 263-65, ¶¶ 26, 32, 74 P.3d at 589-91 (general and uniform clause requires state to fund public school system that is adequate).

¶14 Because Appellants admit their children are receiving adequate, free public educations, the superior court properly dismissed

---

2      *Roosevelt I* was decided by a plurality of the court. Although Justice Feldman concurred in the result, he could "not go so far as to conclude that even if every child in the state were receiving an 'adequate education, gross facility disparities' resulting from a state-imposed financing scheme 'would violate the uniformity clause.'" *Roosevelt I*, 179 Ariz. at 249, 877 P.2d at 822.

their claims based on the general and uniform clause of the state constitution.

### IV.    Equal Protection

**¶15**       The equal protection clause of the Arizona Constitution provides:

> No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations.

Ariz. Const. art. II, § 13.

**¶16**       Equal protection guarantees are satisfied "if all persons in a class are treated alike." *Ariz. State Tax Comm'n v. Frank Harmonson Co. Metal Prods.*, 63 Ariz. 452, 459, 163 P.2d 667, 670 (1945); *see also Salt River Pima-Maricopa Indian Comty. Sch.*, 200 Ariz. at 111, ¶ 9, 23 P.3d at 106 (equal protection requires state to "afford equal treatment to persons similarly situated"). The equal protection clause does not prohibit all inequality of treatment, "but only require[s] that all persons in a given class be treated equally." *Shelby Sch. v. Ariz. State Bd. of Educ.*, 192 Ariz. 156, 169, ¶ 65, 962 P.2d 230, 243 (App. 1998).

**¶17**       The threshold question is whether Appellants' children have been treated unequally when compared to other members of their class. *See Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, 570, ¶ 54, 81 P.3d 1016, 1029 (App. 2003) (party asserting equal protection violation must first demonstrate treatment different from others in similarly situated class). Unless that question is answered affirmatively, it is unnecessary to decide whether disparate treatment in this context would be subject to strict scrutiny or rational basis review.

**¶18**       Appellants allege that "Arizona's public district school students and its public charter school students are similarly situated members of a single class -- Arizona public school students." Appellants, though, have not demonstrated unequal treatment in comparison to other members of this "single class." Appellants concede their children's attendance at charter schools is "completely voluntary and optional" and that they may enroll in district schools at any time. Appellants do not allege their district schools are inadequate, such that choosing a charter school was necessary to ensure an adequate education for their children. In sum, Appellants have failed to satisfy the threshold requirement of establishing

they have been treated differently from other members of their class, all of whom may choose to attend district schools or charter schools, among other options.[3]

**¶19**        Other courts have rejected similar equal protection challenges asserted by charter school students.  In *J.D. ex rel. Scipio-Derrick v. Davy*, 2 A.3d 387, 397-98 (N.J. Super. Ct. App. Div. 2010), the court stated:

> In assessing a state equal protection claim, we must first identify the nature of the affected right.  That right is to receive a thorough and efficient education.  Unlike the students involved in the *Robinson* [*v. Cahill*, 303 A.2d 273 (N.J. 1973), *reh'g granted*, 351 A.2d 713 (N.J. 1975)] and *Abbott* [*v. Burke*, 495 A.2d 376 (N.J. 1985)] cases, who, by virtue of their residence, were required to attend specific public schools in their district, plaintiffs' enrollment in their charter schools is completely voluntary.  They can withdraw at any time and enroll in the traditional public schools in Newark which are receiving the full funding which they seek for their charter schools.
>
> . . . .
>
> The voluntariness of the program vitiates any asserted deprivation of a right to receive an education at a school that is fully funded to the same extent as other Newark public schools when charter school students have the unabridged

---

[3]     Appellants conceded in the superior court that "public charter schools and public district schools are not similarly situated."  They stress that this litigation is "about the treatment of public charter school ***students*** and public district school ***students***," making distinctions between the two types of schools "entirely irrelevant" (original emphasis).  But in both the charter and district school context, it is the *schools* that receive funding, not the students.  In this respect, Appellants' children are once again treated the same as their district school counterparts.  Counsel further clarified at oral argument before the superior court that Appellants "aren't here claiming that there is a fundamental right to education funding," but are instead pressing their constitutional right to an education.  As discussed *supra*, Appellants' children have not been deprived of their constitutional right to an adequate education.

option of attending one of those traditional public schools in their district.

**¶20** We agree with the New Jersey court's analysis, which applies with equal force to the relevant provisions of the Arizona Constitution. Appellants' children have available to them the same rights and privileges as other members of their class. At any time, they may choose to attend district schools that receive the funding they deem more desirable. As pled by Appellants, their children have not been treated unequally as a matter of law. Because Appellants have not established the requisite disparate treatment, we need not decide whether proven inequality would trigger strict scrutiny or rational basis review.

## CONCLUSION

**¶21** We affirm the superior court's grant of summary judgment to Appellees. We deny Appellants' request for attorneys' fees and costs because they have not prevailed. We award Appellees their taxable costs on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
FILED: jt