IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————

JANE DOE I, JANE DOE II, AND JOHN DOE, BY AND THROUGH CONSERVATOR,
FLEMING AND CURTI PLC,
*Plaintiffs/Appellants*,

*v.*

SHAUNICE WARR,
*Defendant/Appellee.*

No. 2 CA-CV 2023-0272
Filed March 21, 2025

———————————

Appeal from the Superior Court in Cochise County
No. S0200CV202000599
The Honorable Timothy B. Dickerson, Judge

**REVERSED AND REMANDED**

———————————

COUNSEL

Cadigan Law Firm PLLC, Tucson
By Lynne M. Cadigan

Manly, Stewart & Finaldi, Irvine, California
By John C. Manly

and

John Trebon P.C., Flagstaff
By John J. Trebon
*Counsel for Plaintiffs/Appellants*

Mitchell Stein Carey Chapman PC, Phoenix
By Anne M. Chapman and Kathleen E. Brody
*Counsel for Defendant/Appellee*

---

**OPINION**

Presiding Judge Kelly authored the opinion of the Court, in which Vice Chief Judge Eppich concurred and Judge Brearcliffe dissented.

---

K E L L Y, Presiding Judge:

**¶1**   Jane Doe I, Jane Doe II, and John Doe (collectively, "the Does"), each a minor at the time of the filing of the complaint, appeal the superior court's grant of summary judgment in favor of Shaunice Warr. The Does contend the court erred in concluding Warr had no common law or statutory duty to report the ongoing sexual abuse inflicted on them by their father. For the following reasons, we reverse the court's entry of summary judgment and remand for further proceedings.

### Factual and Procedural Background

**¶2**   We view all facts and reasonable inferences in the light most favorable to the Does, the parties opposing summary judgment. *See Doe v. Roman Catholic Church of Diocese of Phoenix*, 255 Ariz. 483, ¶ 2 (App. 2023). The relevant facts on which the parties agree or, at least, do not dispute are as follows:

**¶3**   The Does endured extensive and ongoing sexual abuse by their father for many years while they were between the ages of six weeks and twelve years old. Before he committed suicide, their father, a former U.S. Border Patrol agent, had been charged for these crimes. Their mother was also separately convicted for knowing about the abuse of her children and failing to protect them.

**¶4**   During the years of abuse, Warr was a fellow member of the Does' church ("the Church") and friend of the Does' mother. Warr also served as the Does' Sunday school teacher. The Does attended church nearly every Sunday for years, and Warr taught them for approximately two hours every Sunday. Warr was also a U.S. Border Patrol agent assigned to the same station as the Does' father. Although the Does' father did not allow church members into the family home, Warr visited the Does' home when their father was not there. Warr would also occasionally babysit for the Does at their home.

¶5 In October 2021, the Does filed their first amended complaint against the Church and others involved with the Church, including Warr. As to Warr, the Does asserted claims of negligence, negligent and intentional infliction of emotional distress, breach of fiduciary duty, ratification, and civil conspiracy. Each of the claims relied on the underlying assertion that Warr owed the Does either a common law duty to report any suspected abuse, a statutory duty under A.R.S. § 13-3620(A) to do so as a "mandatory reporter," or both.

¶6 Warr moved for summary judgment, seeking dismissal of all the claims against her, which the Does opposed. Following oral argument, the superior court granted Warr's motion, dismissing all the claims against her. The court explained the Does had not cited any legal authority to support a finding that they had a special relationship with Warr such that she would have had a common law duty to protect them by reporting suspected abuse. The court additionally stated that the Does had "offered no authority stating that an occasional daytime babysitter, close friend, Sunday school teacher, or a person who frequently visits a family's home on behalf of a church, forms a special relationship . . . recognized in Arizona as carrying a common law duty to report suspected abuse." To the extent Warr owed any duty as their Sunday school teacher or babysitter, the court concluded, such duty "was limited to those times when [the Does] were under her control." The court also determined that Warr was not a mandatory reporter under § 13-3620(A) because she did not have "a professional relationship" with the Does. As to the conspiracy claim, the court concluded that, because Warr was not a mandatory reporter under § 13-3620(A), the Does could not demonstrate by the required evidentiary standard any agreement with another or with the Church to act unlawfully.

¶7 The Does filed a motion for reconsideration, which the superior court denied. The court entered a final judgment as to Warr pursuant to Rule 54(b), Ariz. R. Civ. P. The Does appealed. We have jurisdiction under A.R.S. §§ 12-2101(A)(1) and 12-120.21(A)(1).

**Discussion**

¶8 As relevant to their negligence and breach of fiduciary duty claims, the Does argue on appeal, as they did below, that Warr owed a duty to report any reasonably suspected sexual abuse because she had a "special relationship" to the Does—which established a common law duty of care requiring such reporting—and was otherwise a "mandatory reporter" under § 13-3620(A)(5) as a "person who ha[d] responsibility for the care or treatment" of the Does. The Does also contend that the superior court

improperly dismissed their negligent and intentional infliction of emotional distress claims without due consideration because those claims did not require a showing of duty.[1]

**¶9**    "On appeal from a grant of summary judgment, we review *de novo* the superior court's application of the law." *Craven v. Huppenthal*, 236 Ariz. 217, ¶ 5 (App. 2014). Likewise, we review matters of statutory interpretation *de novo*. *Id.* Under Arizona law, a duty is established through either "special relationships or public policy, and we look primarily to statutes and common law to create and define duty." *Avitia v. Crisis Preparation and Recovery Inc.*, 256 Ariz. 198, ¶ 26 (2023). We address each in turn.

## I.   Common Law Duty to Report

**¶10**    Generally, the common law rule is that no one is legally bound to act for the benefit of, or to protect, another. *See Dinsmoor v. City of Phoenix*, 251 Ariz. 370, ¶ 15 (2021); *Hafner v. Beck*, 185 Ariz. 389, 391 (Ariz. 1995) ("We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances."). However, "a common law duty may be found in parts of the Restatement," and the "Restatement (Second) § 324A recognizes a duty to third parties under specified circumstances where a person 'undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person.'" *Avitia*, 256 Ariz. 198, ¶ 43. Thus, to the extent a common law duty to report the sexual abuse of another exists, it would stem from this broader duty to protect. *Cf. Dinsmoor*, 251 Ariz. 370, ¶ 15 (school-student relationship imposes affirmative duty on schools to protect students from unreasonable risks of harm). Such a duty would not necessarily require the reporter to personally intervene to prevent the abuse but would instead impose a duty to report the abuse to, for example, law enforcement. *See id.* ¶ 17 (discussing limits of relationship-based duty); Restatement (Third) of Torts § 41 (2012) (duty under this section does not require actor to control other person but actor must take "reasonable steps, in light of the foreseeable probability and magnitude of any harm, to prevent [harm] from occurring").

---

[1]The Does do not address the dismissal of their claims for ratification or conspiracy. Therefore, we do not address them. *See Ritchie v. Krasner*, 221 Ariz. 288, ¶ 62 (App. 2009).

¶11 Although there is no universal common law duty to protect others, a duty can arise from certain "special relationships" based on contract, familial ties, or conduct. *See Dinsmoor*, 251 Ariz. 370, ¶ 15; *Gipson v. Kasey*, 214 Ariz. 141, ¶ 18 (2007). Courts have recognized the following categorical special relationships, among others, as establishing a duty of care: "the landowner-invitee relationship, the tavern owner-patron relationship, and those 'special relationships' recognized by § 315 of the Restatement (Second) of Torts (1965) that create a duty to control the actions of another." *Gipson*, 214 Ariz. 141, ¶ 19 (citations omitted). When a duty derives from the existence of a special relationship, the duty is limited in scope to the risks arising in the context of the relationship. *Dinsmoor*, 251 Ariz. 317, ¶ 17. The "duty of care is bounded by geography and time, encompassing risks such as those that occur while the [plaintiff] is . . . under the [defendant's] control." *Id.* ¶ 18 (quoting *Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, ¶ 6 (App. 2014)).

¶12 The Does argue that "Warr, as a Sunday [school] primary teacher, had a 'special relationship' with [the Does], imposing a 'duty,' at the least, to report reasonably suspected child abuse."[2] As noted above, the superior court determined that the Does provided no authority indicating that a Sunday school primary teacher has "a common law duty to report suspected abuse" based on a special relationship with her students. Moreover, the court reasoned, any duty Warr owed as a Sunday school teacher "was limited to those times when [the Does] were under her control."

¶13 We similarly cannot conclude, and the Does have not sufficiently shown, that the role of a Sunday school teacher imparts a common law duty to protect similar to that of an elementary or a grade school teacher with a recognized special relationship to his or her students. Elementary and grade school teachers have a special relationship to their students and are burdened with the common law duty to protect, in part,

---

[2]The Does do not argue that Warr, as their babysitter, had a special relationship with them imposing a common law duty to report suspected abuse. Therefore, this argument is waived. *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, n.1 (App. 2010). Regardless, even if Warr did have a special relationship with the Does as their babysitter, the Does have not produced evidence suggesting any abuse occurred while she was babysitting them or within the scope of her duties as their babysitter. *See Dinsmoor v. City of Phoenix*, 251 Ariz. 370, ¶¶ 17-18 (2021).

due to the concept of *in loco parentis*, under which school personnel act in place of parents while children are in their care. *See LaFrentz v. Gallagher*, 105 Ariz. 255, 258 (1969) ("[C]ourts have held that [a] teacher is in loco parentis . . . ."); *Hale v. Window Rock Unified Sch. Dist.*, 252 Ariz. 420, ¶ 11 (App. 2021) ("A school's duty to its students is predicated upon the various roles it fills as custodian, land possessor, and quasi-parental figure . . . ."). There is no evidence of any similar duty, and the Does cite no binding legal authority for the imposition of such a legal duty at common law on a church Sunday school teacher. Accordingly, the superior court did not err in determining that the Does had failed to establish that Warr had a common law duty to report the abuse.

## II. Statutory Duty to Report

¶14         In addition to duties arising under common law, duties can be created by statute. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, ¶ 2 (2018). Under § 13-3620(A), "[a]ny person who reasonably believes that a minor is or has been the victim of physical injury, abuse, child abuse, a reportable offense or neglect . . . shall immediately report . . . this information." The statute defines "person" as anyone within the following six categories:

> 1. Any physician, physician's assistant, optometrist, dentist, osteopathic physician, chiropractor, podiatrist, behavioral health professional, nurse, psychologist, counselor or social worker who develops the reasonable belief in the course of treating a patient.
>
> 2. Any peace officer, child welfare investigator, child safety worker, member of the clergy, priest or Christian Science practitioner.
>
> 3. The parent, stepparent or guardian of the minor.
>
> 4. School personnel, domestic violence victim advocates or sexual assault victim advocates who develop the reasonable belief in the course of their employment.
>
> 5. Any other person who has responsibility for the care or treatment of the minor.

6. Any person who is employed as the immediate or next higher level supervisor to or administrator of a person who is listed in paragraph 1, 2, 4 or 5 of this subsection and who develops the reasonable belief in the course of the supervisor's or administrator's employment . . . .

§ 13-3620(A)(1)-(6).

¶15     As below, the Does argue on appeal that Warr falls under § 13-3620(A)(5) because she was responsible for the Does' "care or treatment" as a Sunday school teacher and babysitter. Warr disagrees.

¶16     The superior court concluded that those who provide "care" and "treatment" are "two separate categories of persons and that 'treatment' should be interpreted as meaning medical treatment." Because the court determined that Warr had provided no medical treatment to the children, it focused on whether Warr had "cared" for the children under the statute. The court found no caselaw or legislative history supporting a broad definition of "care" under § 13-3620, such that Warr's relationship with the Does would qualify her as a mandatory reporter. The court acknowledged that there were factual disputes "over how often . . . Warr had contact with [the Does]" but stated it "does not find these disputes of fact to be material because it does not change the nature of the relationship between [them]." The court also noted that the duty of mandatory reporting is assigned to four distinct categories of persons—excluding the categories of parents, step-parents, or guardians and supervisors or administrators—each of whom "are persons who have contact with children in a professional matter."

¶17     The superior court ultimately concluded that "including as a mandatory reporter anyone who provides occasional, non-professional 'care' to a child would pull into the scope of A.R.S. § 13-3620(A) many individuals, e.g., neighbors, family friends, and relatives other than parents, stepparents and guardians," whom the legislature had not intended to include. And the court reasoned that by including supervisors of those listed in (A)(1), (2), (4), or (5) under § 13-3620(A)(6), the legislature implied its intent that § 13-3620(A)(5) means "a person who provides care in a professional setting, such as childcare centers or similar facilit[ies]." The court further stated that if the legislature had intended § 13-3620(A)(5) to include every person who assumes a caring role in a child's life, the statute could have mandated "that 'any person' who reasonably believes a minor

is a victim of abuse" is a mandatory reporter, rather than categorically listing professional caretakers who qualify.

¶18 In interpreting a statute, we begin with the statute's plain language. *See In re Drummond*, 257 Ariz. 15, ¶ 5 (2024). We read "each word, phrase, clause, and sentence in such a way to ensure no part of the statute is void or trivial." *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 110, ¶ 15 (2024). In doing so, "we give words 'their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended.'" *Fann v. State*, 251 Ariz. 425, ¶ 25 (2021) (quoting *Arizona ex rel. Brnovich v. Maricopa Cnty. Cmty. Coll. Dist. Bd.*, 243 Ariz. 539, ¶ 7 (2018)). "When a statute's plain language is unambiguous in context, it is dispositive." *Drummond*, 257 Ariz. 15, ¶ 5.

¶19 Here, as stated above, the plain language of § 13-3620(A)(5) provides: "Any other person who has responsibility for the care or treatment of the minor" has a duty to report suspected abuse. The superior court correctly concluded that those who provide "care" and those who provide "treatment" are two separate groups. *See Or*, Merriam-Webster, https://merriam-webster.com (last visited Jan. 21, 2025) ("used as a function word to indicate an alternative"); *see also Rutledge v. Ariz. Bd. of Regents*, 147 Ariz. 534, 556 (App. 1985) (same). The Does seem to agree on appeal that we are dealing only with persons who have responsibility for the "care" of a minor. We therefore limit our analysis accordingly.

¶20 The superior court also correctly pointed out that § 13-3620(A) lists six general groups of individuals who have a duty to report suspected abuse: physicians and medical professionals; peace officers and clergy members; school personnel; "[a]ny other person who has responsibility for the care or treatment of the minor"; supervisors of any such individuals; and parents and guardians. However, we disagree with the court that by including supervisors under § 13-3620(A)(6), the legislature necessarily intended for § 13-3620(A)(5) "to refer to a person who provides care in a professional setting, such as childcare centers or similar facilit[ies]."

¶21 The language of § 13-3620(A)(5) requires "*[a]ny other person who has responsibility for the care . . . of the minor*" to report suspected abuse. (Emphasis added.) If the legislature had intended that subsection to reach only "professional" individuals, it easily could have said so. *See Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) (courts will not read into statute something "not within the manifest intention of the legislature as gathered from the statute itself," nor will we "inflate, expand, stretch or extend a

statute" (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965))). Instead, the legislature used the broad phrase "[a]ny other person," limiting it only by that person's responsibility for the care of the minor. § 13-3620(A)(5).

**¶22** Our dissenting colleague concludes that, when read in context, § 13-3620(A)(5) must include a person who "assumes a role as to a child akin to those others who are listed." *Infra* ¶ 39. With that, we agree. The canon of *ejusdem generis* provides: "[G]eneral words [that] follow the enumeration of particular classes of persons or things should be interpreted as applicable only to persons or things of the same general nature or class." *Est. of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, ¶ 13 (2011) (second alteration in *Est. of Braden*) (quoting *State v. Barnett*, 142 Ariz. 592, 596 (1984)). "Similarly, *noscitur a sociis*—a canon closely related to *ejusdem generis*—dictates that a statutory term is interpreted in context of the accompanying words." *Id.*

**¶23** As stated above, the phrase, "Any other person who has responsibility for the care . . . of the minor," follows the enumeration of physicians, dentists, nurses, counselors, social workers, peace officers, child welfare investigators, clergy members, parents, step-parents, and school personnel, among many others. § 13-3620(A)(1)-(5). That list includes individuals with both formal and informal relationships with a minor; for example, a physician need not be treating the minor directly to trigger the duty so long as he or she develops the reasonable belief in the course of treating a patient. *See id.* The list also includes individuals with both occasional and ongoing contact with a minor; for example, an emergency room physician may treat a minor only once and fairly quickly but still have a duty to report. *See id.* The overarching similarity among these individuals is not that they are "professionals" but that their relationship to the minor has placed them in a position of responsibility. *See id.* Because the phrase "[a]ny other person who has responsibility for the care . . . of the minor" follows this list, it is most reasonably interpreted as applying to individuals not already mentioned who also have a relationship to the minor that has placed them in a position of responsibility. § 13-3620(A)(5).

**¶24** Moreover, reading the term "professional" into the statute, as the superior court did, would lead to arbitrary results. *See State ex rel. Montgomery v. Harris*, 237 Ariz. 98, ¶ 13 (2014) ("Statutes should be construed sensibly to avoid reaching an absurd conclusion."). This interpretation would render other family members not specifically included in § 13-3620(A)(3), such as grandparents, immune from

prosecution under the statute when providing "non-professional" care. It would impose a duty to report on "professional" childcare workers in licensed facilities, but not to individuals providing in-home care, even if the professional childcare workers provided only one hour of care a day while the in-home workers or family members spent all day with the minor. *Cf. State v. Gomez*, 212 Ariz. 55, ¶ 24 (2006) (rejecting interpretation that would "draw arbitrary distinctions based merely on whether a prior charge was by information or indictment"); *Wheeler v. Yuma Sch. Dist. No. One*, 156 Ariz. 102, 107 (1988) (rejecting interpretation that "classroom performance" means teacher's in-class conduct because such interpretation would produce irrational result insofar as teacher who mistreats students on playground would not be entitled to same notice and opportunity as teacher whose misconduct occurs in classroom). A grandparent may have as much or even more responsibility for the care of a minor, notwithstanding the lack of professional employment. The duty to report depends on the existence of such responsibility, not the person's professional status.

**¶25**         Although not binding, an opinion from the New Mexico Supreme Court also supports our conclusion. New Mexico has a statute similar to § 13-3620(A):

> Every person, including a licensed physician; a resident or an intern examining, attending or treating a child; a law enforcement officer; a judge presiding during a proceeding; a registered nurse; a visiting nurse; a school employee; a social worker acting in an official capacity; or a member of the clergy who has information that is not privileged as a matter of law, who knows or has a reasonable suspicion that a child is an abused or a neglected child shall report the matter immediately to [certain authorities].

N.M. Stat. Ann. § 32A-4-3(A). The New Mexico Court of Appeals concluded that the New Mexico statute did not require a "private-practice social worker" to report known abuse because he was not, in the words of the statute, "a social worker acting in an official capacity." *State v. Strauch*, 2015-NMSC-009, ¶¶ 3, 7-8, 345 P.3d 317. The court determined that "the statute does not actually require 'every person' to report child abuse but

only those categories of persons the statute specifically identifies after the words, 'every person, including.'" *Id.* ¶ 7.

**¶26** The New Mexico Supreme Court reversed, concluding that the words "[e]very person," as used in § 32A-4-3(A), mean every person. *Id.* ¶¶ 33-38, 48. As an initial matter, the court recognized the statute's lack of clarity:

> [I]f the Legislature had meant to impose a reporting requirement on only the professionals specifically mentioned in the statute, why did it include the words, "[e]very person, including" immediately before identifying those professions? Conversely, if the Legislature had meant to impose a reporting requirement on every person, why did it then specifically mention some occupations and not others?

*Id.* ¶ 16. Turning to the statute's historical context, the court pointed out that the statute was "part of a national movement" to address the problem of child abuse and that it had been amended many times. *Id.* ¶¶ 18-22, 36-37. The court observed that almost all of the states that impose reporting duties on everyone have statutes that specify certain professionals who must report but also require all people to report, regardless of their profession: "This combination of identified occupations and broadly inclusive language has been widely recognized as imposing universal reporting requirements." *Id.* ¶ 33. The court found "no published judicial opinion in any other state that has construed its combined specific and general statutes as imposing obligations only on the identified occupations," and it declined to read the New Mexico statute as doing so. *Id.* ¶ 35.

**¶27** We do not attempt to define every contour of § 13-3620(A)(5), but instead narrowly conclude that the superior court erred in limiting the meaning of the words "[a]ny other person who has responsibility for the care . . . of the minor" to only those persons in a professional setting. Accordingly, the court erred in concluding as a matter of law that Warr owed no duty to the Does on this basis. *See Craven*, 236 Ariz. 217, ¶ 5.

**¶28** The question remains whether Warr, as a Sunday school teacher and babysitter for the Does, had a duty to report under § 13-3620(A)(5). *See Avitia*, 256 Ariz. 198, ¶ 20 (defendant owes duty if it is created by § 13-3620). And although the existence of a duty is a legal issue

11

for the court, "sometimes certain antecedent facts must be considered in determining whether a duty exists–for instance, whether a statute applies to a circumstance to give rise to a duty." *Perez v. Circle K Convenience Stores, Inc.*, No. CV-24-0104-PR, ¶ 20, 2025 WL 779686 (Ariz. Mar. 12, 2025). As such, the question of whether Warr was ever responsible for the care of the Does, and therefore owed them a duty under the statute, depends on underlying factual questions regarding the nature and extent of their relationship. *See Diggs v. Ariz. Cardiologists, Ltd.*, 198 Ariz. 198, ¶ 11 (App. 2000) ("[T]he existence of a duty may depend on preliminary questions that must be determined by a fact finder."). The record before us is not sufficient to address that question, *see Jones v. Respect the Will of the People*, 254 Ariz. 73, ¶ 37 (App. 2022) (moving party bears initial burden of showing no genuine issues of material fact), and we therefore reverse the superior court's entry of summary judgment in favor of Warr and remand to that court for further proceedings consistent with this opinion.

### III. Dismissal of Remaining Claims

¶29 The Does also argue that the superior court improperly dismissed their claims for negligent and intentional infliction of emotional distress "without . . . analysis." Essentially, the Does assert that neither claim requires the showing of a duty; consequently, they reason, the court's conclusion that Warr owed no duty to report should not have affected these two other tort claims.[3]

¶30 The Does are correct that Arizona's emotional distress causes of action do not expressly require proof of a duty. "The three required elements" for intentional infliction of emotional distress are: (1) "the conduct by the defendant must be 'extreme' and 'outrageous,'" (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct," and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987). And

---

[3]In their reply brief, the Does assert that no motion for summary judgment was filed as to these emotional distress claims. On the contrary, Warr's motion for summary judgment sought a wholesale dismissal of each of the claims raised against her. The motion stated, in part, "[t]he Court should grant summary judgment . . . on all [the Does'] claims against [Warr] because, as a matter of law, [she] did not owe a legal duty to [the Does] that could form the basis for liability in this case." Warr's motion, therefore, did encompass the emotional distress claims.

"[t]he tort of negligent infliction of emotional distress requires" that "the plaintiff witnessed an injury to a closely related person, suffered mental anguish manifested as physical injury, and was within the zone of danger so as to be subjected to an unreasonable risk of bodily harm created by the defendant." *Rodriguez v. Fox News Network, L.L.C.*, 238 Ariz. 36, ¶ 7 (App. 2015). Although neither cause of action expressly requires duty, each requires that there be an act that results, either intentionally or negligently, in another's emotional distress.

¶31 In count two of their first amended complaint for intentional infliction of emotional distress, the Does alleged:

> [Warr] . . . knew that [the Does] were suffering from years of abuse and did nothing to protect them. Instead of reporting the abuse, [Warr] consciously elected to withhold the reporting of the abuse, and otherwise completely failed to intervene . . . thereby intentionally and/or recklessly creating circumstances in which [the Does] were continually exposed to . . . vicious and horrific abuse for years on end.

And count three for negligent infliction of emotional distress alleged:

> [Warr] consciously withheld reporting of the abuse and placed the responsibility for stopping [the Does' father] or removing [the Does] from [his] abuse entirely on [their mother], and completely failed to otherwise intervene . . . . This trapped [the Does] in the "zone of danger" . . . .

¶32 The underlying act alleged against Warr in the complaint was the failure to act—that is, to report—where there was a duty to do so. Because the superior court incorrectly determined that no such duty existed under § 13-3620(A)(5) absent a "professional" relationship, we reverse summary judgment on the emotional distress claims and remand to that court for additional proceedings.

## Attorney Fees and Costs

¶33 Warr requested attorney fees on appeal as a sanction. We deny the request. The Does, however, are entitled to their costs as the

13

prevailing party, upon their compliance with Rule 21, Ariz. R. Civ. App. P. *See* A.R.S. § 12-341.

**Disposition**

**¶34** For the foregoing reasons, we reverse the superior court's ruling granting summary judgment in favor of Warr and remand for further proceedings consistent with this opinion.

B R E A R C L I F F E, Judge, dissenting:

**¶35** Each of us agrees that, in interpreting a statute, we rely on the statute's plain meaning. *See State ex rel. Ariz. Dep't of Revenue v. Tunkey*, 254 Ariz. 432, ¶¶ 23, 31-32 (2023) (Bolick, J., concurring). In doing so, we "will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself," and we "will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." *Roberts*, 253 Ariz. 259, ¶ 20 (quoting *City of Phoenix*, 99 Ariz. at 133). My colleagues' interpretation of § 13-3620(A)(5), in light of those principles, is not an unreasonable interpretation. Both the majority and this dissent endeavor to work out the breadth of § 13-3620(A)(5) because none of us believes the words of that subsection alone clearly convey the legislation's intended scope. Because I disagree with the majority's reading of § 13-3620(A)(5)—albeit, admittedly, without a high degree of confidence—I respectfully dissent from sections II and III of the Opinion and from its disposition.

**¶36** On its face, and in isolation, § 13-3620(A)(5) could be read broadly to extend to "any person" so long as that person has some responsibility for the care or treatment of a child, however tangential. But we do not determine the plain meaning of a statute from one of its subsections in isolation. *See Glazer v. State*, 244 Ariz. 612, ¶ 10 (2018). Each part of a statute is read *in pari materia* with its other provisions. *Id.*; *Stambaugh v. Killian*, 242 Ariz. 508, ¶ 7 (2017). And here, because the legislature chose the referential phrase "[a]ny *other* person who has responsibility for the care or treatment of the minor," rather than the broader "any person" who has such responsibility, we must discern why. § 13-3620(A)(5) (emphasis added). The term "other" must refer to something.

**¶37** Section 13-3620(A) identifies several categories of persons who, in some form, do or may have responsibility for what we have traditionally considered the care or treatment of children. Those listed in

subsections (A)(1) through (4)—except for parents and guardians—do or may engage with children as professional treatment providers or caregivers, not casual ones. *See L.A.R. v. Ludwig*, 170 Ariz. 24, 27 (App. 1991) (noting the "strong policy reasons" embodied in § 13-3620(A) require "professionals who work with children to report instances of suspected child abuse"). As the superior court concluded, and in my view, "[a]ny *other* person," when interpreted contextually, must be a person who, even though not holding a professional position or job title listed elsewhere, assumes a role as to a child akin to the roles of the others who are listed. § 13-3620(A)(5) (emphasis added).

¶38 Under the *ejusdem generis* canon of statutory interpretation, "[w]here general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012). In such cases, "one presumes that the speaker or writer has that category in mind for the entire passage." *Id.* In other words, general terms used later in a statute do not render the more specific mandates preceding them meaningless. Similarly, under the *noscitur a sociis* canon, words "grouped in a list" are to be given "related meanings." *Id.* at 195 (quoting *Third Nat'l Bank in Nashville v. Impac Ltd.*, 432 U.S. 312, 322 (1977)). Consequently, it makes best sense that subsection (A)(5) does not broaden the scope of the statute but rather that it continues a list of related categories of occupations found elsewhere in the statute.

¶39 In limiting the reach of the statute to those who have taken on something akin to the professional role of others covered by the statute, the legislature ensures that criminal penalties do not fall on the unsuspecting.[4] Warr's relationship to the Does as a Sunday school teacher and an occasional babysitter does not establish the needed professional level of care under § 13-3620(A)(5). I conclude, therefore, that the superior court correctly determined that Warr was not a statutory mandatory reporter.

¶40 The appellants' and the majority's reading of subsection (A)(5) would render the earlier exclusive definitions of mandatory

---

[4]A.R.S. § 13-3620 is a criminal statute, carrying misdemeanor and felony penalties. A.R.S. § 13-3620(O). When interpreting a criminal statute, when we are unable to discern the legislature's intent, we must be careful not to sweep within its grasp those who are unsuspecting. *See State v. Sanchez*, 209 Ariz. 66, ¶ 6 (App. 2004) (an unresolvable ambiguity should be read in favor of the defendant).

reporters meaningless by expanding the list of reporters to include nearly every person who has any level of responsibility for a minor child. Such a reading could arguably include someone who may merely have temporary physical custody of an otherwise unaccompanied child, such as a city bus driver, an airline employee, a crossing guard, a neighbor who watches over a child for an hour after school, or a volunteer driver in a neighborhood school carpool. We should not interpret § 13-3620(A)(5) here in a way that renders the other, more specific provisions of § 13-3620(A) meaningless by interpreting it to encompass such peripheral relationships as those Warr had here with the Does and their family.

¶41        To support its interpretation, the majority cites the New Mexico Supreme Court opinion in *State v. Strauch,* 2015-NMSC-009, 345 P.3d 317, even though this opinion interprets a statute that is distinct in a salient way. As the majority correctly relates above, the New Mexico law at issue in *Strauch* required that "[e]very person, including . . . a social worker acting in an official capacity . . . who knows or has a reasonable suspicion that a child is an abused or neglected child shall report the matter to" certain authorities. *Id.* ¶ 1 (first alteration in original) (quoting N.M. Stat. Ann. § 32A-4-3 (2005)). In addition to "a social worker acting in an official capacity," the law listed a series of other professions, including law enforcement officers, certain judges, and visiting nurses. *Id.;* § 32A-4-3. The New Mexico intermediate appellate court had concluded that a "private-practice social worker" was not covered by the statute because he was not a "social worker acting in an official capacity"—meaning serving as a government employee or contractor. *Strauch*, 2015-NMSC-009, ¶¶ 3, 7-8.

¶42        The state supreme court, on review, recognized that the statute was unclear. *Id.* ¶ 15. It concluded, however, that its statute had been adopted as "part of a national movement" mandating reporting and that no other state with a similar statute had limited its statute's reach to only listed professions. *Id.* ¶¶ 18, 35. The state supreme court noted that, in the 1993 amendment to the statute, the legislature had placed the "inclusive language at the beginning instead of the end of the listed occupations and emphasized that the list was not exclusive." *Id.* ¶ 36. (statute as amended read, "[e]very person, including but not limited to" social worker acting in an official capacity); *see* 2003 N.M. Laws, ch. 189, § 1(A). And then later the legislature removed the phrase "but not limited to" altogether. It did so, however, only because, under the New Mexico statutory drafting guidelines, "'includes' implies an incomplete listing," serving the purpose of the phrase "including but not limited to." *Strauch*, 2015-NMSC-009, ¶ 37. Consequently, the court held the phrase "every

person, including" to be broad in scope and not limited to, but rather merely inclusive of, those specifically identified professions, such as a social worker in an official capacity. *See id.*

¶43        But our statute is distinct from the New Mexico statute in its use of the phrase "every person," rather than "every *other* person," — a construction more like our law — and of the word "including" followed by a non-exhaustive list of occupations. *See* § 32A-4-3. The equivalent here would be if A.R.S. § 13-3620(A)(5) said "any person who has responsibility for the care or treatment of the minor, including but not limited to physicians, parents, social workers, etc." Under our law, the list of persons in § 13-3620(A)(5) is an exclusive list, not an inclusive list.

¶44        The majority faults reading the need for a professional relationship into the statute because the legislature could have expressly written that in if it had meant to so limit the reach of the law. Of course, if the legislature intended that "any person who has responsibility for the care or treatment of the minor" be covered, it could have written that as well. It instead wrote "any *other* person," after providing a fairly explicit list of exclusively professional occupations and relationships – exclusive, of course, except for parents, stepparents and guardians, who are otherwise typically legally responsible for their children and wards. *See* § 13-3620(A). By using the limited phrase "any other person," the legislature, in effect, correspondingly limited the definition of "care or treatment" to professional care or treatment. This limited reach of the law, on the acknowledged facts presented to the superior court, does not cover Warr.[5]

¶45        Again, we are all trying to understand what the legislature meant exactly because the statute is less than precise, and the consequences are serious. The appellants want to hold responsible those who failed to fulfill a legal duty imposed on them that might have prevented or lessened the harm they suffered, and the appellee faces financial ruin, reputational harm, and even criminal penalties if she failed to fulfill a legal duty. I conclude that the most reasonable interpretation of the phrase "any other person" in the context of § 13-3620, as a whole, is not "any person," or even

---

[5]There is a sensible argument that the law, even under this dissent's interpretation, should also reach those others who have responsibility for the care or treatment of minors in a way similar to that of parents, stepparents, and guardians — who are also listed in the statute but who are, of course, nonprofessional. That may indeed need to be addressed under a separate set of facts in another case.

"any person in a position of trust or supervision," but rather "any person other than those listed who has a responsibility for the care or the treatment of children similar to that of those listed"—meaning those, other than parents and guardians, who serve in a professional relationship in caring for or treating the child. The superior court was therefore correct, and I respectfully dissent from section II of the Opinion and would affirm.

¶46 As to section III, because the appellants' allegations of negligent and intentional infliction of emotional distress require the presence of a duty, and because no common law or statutory duty was shown, I respectfully dissent and would affirm the superior court's judgment on those claims as well.